**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Father and Mother Doe, husband and wife, in their own capacities and as the natural parents and legal guardians on behalf of Jane Doe, a minor child,<br><br>Plaintiffs,<br><br>vs.<br><br>The Round Valley Unified School District; John Stuart Allen, in his individual and official capacity as principal of Round Valley High School; and Julie Merrill Allen, his wife,<br><br>Defendants. | No. CV 12-08044-PCT-NVW<br><br>**ORDER** |

Before the Court are Round Valley Unified School District's Motion to Dismiss (Doc. 4) and the "Motion to Dismiss by John and Julie Allen" (Doc. 5). The Court heard oral argument on May 23, 2012. For the reasons stated below, the motions will be granted with prejudice as to Plaintiffs' Title IX and § 1983 claims and this case will be remanded to Apache County Superior Court.

**I.   LEGAL STANDARD**

To state a claim for relief under Fed. R. Civ. P. 8(a), a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

omitted). This "short and plain statement" must also be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. A claim is plausible if it contains "[f]actual allegations [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to permit a reasonable inference that the defendant is liable for the conduct alleged, *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, the plaintiff must at least "allege sufficient facts to state the elements of [the relevant] claim." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

In evaluating a motion to dismiss, the Court accepts all of Plaintiffs' plausible factual allegations as true and construes the pleadings in a light most favorable to them. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The Court generally does not look beyond the complaint, but the Court may take judicial notice of matters of public record, even if not alleged in the complaint. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001).

**II.   FACTS**

In late 2010 or early 2011, Plaintiff Jane Doe met non-party Rance Allen at Round Valley High School in Eager, Arizona. Rance was a 17-year-old senior, a prominent student athlete, and the son of the school's principal, Defendant John Allen. Jane Doe was a 14-year-old freshman. Rance and Jane Doe began developing some sort of relationship.

On February 10, 2011, Rance invited Jane Doe and another girl to go out with him for the evening. "Sometime during that evening," Plaintiffs say, "Rance sexually assaulted Jane Doe." (Doc. 1 at 9 ¶ 23.) Over the next couple of days, Rance continued interacting with Jane Doe, using "his age and stature as a High School senior and athlete to gain her trust and admiration." (*Id*. ¶ 24.) On February 14, 2011, Jane Doe went to

1  lunch with Rance. "During lunch, Rance drove Jane Doe to a secluded park and sexually
2  assaulted her." (*Id*. ¶ 25.) Finally, on February 19, 2011 (a Saturday), "Rance provided
3  Jane Doe alcoholic beverages and again sexually assaulted her." (*Id*. ¶ 26.)

4  Jane Doe's mother learned of her daughter's relationship with Rance by
5  overhearing a conversation between other Round Valley High School students. Jane Doe
6  then "confirmed [to her parents] . . . that she had been a victim of sexual assault by
7  Rance." (*Id*. ¶ 27.) On March 2, 2011, Jane Doe's mother confronted John Allen about
8  Rance's actions. Allen arranged a meeting at the school with Jane Doe, her mother, and
9  Rance. The complaint says nothing about whether this meeting actually happened, and if
10 so, what was said. However, John Allen took no action against Rance.

11 On March 30, 2011, Rance was arrested and charged with ten counts of sexual
12 misconduct against Jane Doe. The indictment against Rance is in the record and subject
13 to judicial notice as a public document. (Doc. 14-1.) Of those ten counts, three counts
14 charge Rance with "sexual contact involving the female breast" in violation of A.R.S.
15 § 13-1404(A), which establishes that "[a] person commits sexual abuse by intentionally
16 or knowingly engaging in sexual contact with . . . any person who is under fifteen years
17 of age if the sexual contact involves only the female breast." This subsection contains no
18 exception for consent. The remaining seven counts charge Rance with "sexual
19 intercourse or oral sexual contact with [Jane Doe], a person thirteen or fourteen years of
20 age or younger," in violation of A.R.S. § 13-1405(A). That subsection declares, "A
21 person commits sexual conduct with a minor by intentionally or knowingly engaging in
22 sexual intercourse or oral sexual contact with any person who is under eighteen years of
23 age." This subsection likewise contains no exception for consent.

24 Jane Doe's parents learned from the indictment that Rance was also being charged
25 with sexual misconduct involving other girls, based on sexual contact that took place in
26 December 2009 and May 2010. These encounters formed the basis of three additional
27 counts of sexual misconduct in violation of A.R.S. § 13-1406(A), which states, "A person
28 commits sexual assault by intentionally or knowingly engaging in sexual intercourse or

oral sexual contact with any person without consent of such person." The indictment says nothing about the age of these other victims.

Based on the indictment, Plaintiffs allege:

> Upon information and belief, Defendant John Allen was aware of these incidents [from December 2009 and May 2010] and similar illegal and improper actions taken by his son, Rance. However, Defendant John Allen failed to take reasonable measures to protect female students at Round Valley High School from a known sexual predator.
>
> Instead, Defendant John Allen attempted to conceal these improper and illegal actions and shield his son from disciplinary or protective actions he would have taken against any other student in similar situation.

(Doc. 1 at 8 ¶¶ 19–20.)

### III. PROCEDURAL HISTORY

Plaintiffs filed their complaint on February 17, 2012 in Apache County Superior Court. Although Plaintiffs have what appears to be a prima facie case of battery against Rance Allen, they did not name Rance as a defendant. They instead named Round Valley Unified School District and John Allen, along with Allen's wife (for community liability purposes). Plaintiffs charged all defendants with:

- violating Title IX, based on Defendants' alleged notice of "repeated acts of sexual harassment and sexual assault by [a] fellow student" on Jane Doe (*see* Doc. 1 at 12 ¶¶ 49–50);
- violating 42 U.S.C. § 1983 through an alleged "special relationship" between Defendants and Jane Doe, and Defendants' "fail[ure] to prevent Rance's sexual harassment and sexual assault of Plaintiff Jane Doe" (*see id.* ¶¶ 54–56);
- common law negligence, alleging "a duty of reasonable care and the creation of a safe and nurturing educational environment" and breach of

   that duty "by failing to protect Jane Doe from the legal sexual harassment and sexual assault" (*see id*. ¶¶ 64–66);

- negligent hiring, training, and supervision, claiming that Defendants failed "to properly train and supervise teachers, faculty, and staff in their ongoing duty to be able to recognize and report signs and allegations of student molestation and sexual assaults" (*see id*. ¶ 75); and

- loss of consortium, because "Plaintiffs Father Doe and Mother Doe have suffered a degraded familial relationship and been deprived of the care, protection, support, services, society, advice, companionship, love and affection of their daughter" (*see id*. ¶ 81).

Plaintiffs also asked for punitive damages against all Defendants.

On March 9, 2012, Defendants removed to this Court. The School District then moved to dismiss the § 1983 claim, and argued against the availability of punitive damages. John Allen and his wife separately moved to dismiss all counts of the complaint, and the School District joined in that motion.

## IV. STIPULATED ISSUES

The School District argues that there is no theory under which it could be liable for punitive damages. In response, Plaintiffs stipulate that they will not seek punitive damages against the School District. (Doc. 7 and 2.) Accordingly, Plaintiffs' requests for punitive damages are deemed to be directed only at the Allens.

The Allens argue that, as individuals, they cannot be liable under Title IX. In response, Plaintiffs stipulate that they will not pursue a Title IX claim against the Allens. (Doc. 10 at 3.) Accordingly, Plaintiffs' Title IX claim is deemed to be directed only at the School District.

## V. INJURY

The face of Plaintiffs' complaint raises a substantial question of whether Jane Doe or her parents suffered any injury recognized by the Constitution, Title IX, or the common law. Plaintiffs repeatedly refer to Rance's conduct as "sexual assault," but

1  Plaintiffs' pleading obligation to show an entitlement to relief "requires more than labels
2  and conclusions." *Twombly*, 550 U.S. at 555.  At issue is what actually happened
3  between Rance and Jane Doe.  The Constitution protects individuals from violations of
4  their "bodily integrity" at the hands of government officials, *Washington v. Glucksberg*,
5  521 U.S. 702, 720 (1997), and nonconsensual sexual contact, if committed or otherwise
6  caused by government officials acting as such,[1] violates the constitutional right to bodily
7  integrity, *see*, *e.g.*, *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1991); *Wood v. Ostrander*, 879
8  F.2d 583 (9th Cir. 1989).  However, consensual intrusions on one's bodily integrity do
9  not violate the Constitution.  *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105,
10 1112–13 (9th Cir. 1999) (granting qualified immunity to prison doctor who reasonably
11 believed that the inmates he operated on had granted consent); *see also Rogers v. City of*
12 *Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998) (upholding district court's finding that
13 police officer's sex with plaintiff was nonconsensual and coerced through his status as a
14 police officer, therefore violating the Constitution).

15  Similarly, although Title IX protects against student-on-student sexual harassment
16 to some degree, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 643 (1999), the
17 parties have cited no authority, and the Court could locate none, holding that consensual
18 sexual conduct between two typical high school students (as opposed to, *e.g.*, cases
19 involving developmentally disabled students) can form the basis of a Title IX claim.
20 Finally, consent is generally a defense to common law tort claims as well.  *Restatement*
21 *(Second) of Torts* § 892A (1979).

22  Although the Court must draw all reasonable inferences in Plaintiffs' favor,
23 *Knievel*, 393 F.3d at 1072, the complaint currently describes a situation in which Jane
24 Doe was flattered and dazzled by the attention of a popular senior and athlete.  That does
25 not suffice to show lack of consent.

---

[1] Rance Allen is not a government official.  However, as explained below in Part VI, Plaintiffs allege that John Allen and the School District are ultimately responsible for Rance's assaults on Jane Doe.

At oral argument, however, counsel for Plaintiffs elaborated in significant detail. According to counsel, Jane Doe was "enamored" with Rance and willing to be in his presence, but as each of the three incidents developed from casual to sexual, she definitely expressed to Rance her desire not to have sexual contact. The February 14 lunch-hour incident left Jane Doe feeling particularly traumatized and she therefore left school early, explaining to her mother that she felt sick.

These details show that Plaintiffs' claims do not founder on the issue of consent. The Court therefore reaches the question of whether Plaintiffs have stated otherwise viable § 1983 and Title IX claims.

## VI.  SECTION 1983 CLAIMS

### A.  John Allen's Personal Liability

#### 1.  Section 1983 and *DeShaney*

Section 1983 provides no cause of action unless someone acting "under color of law" violated a constitutional or federal statutory right. 42 U.S.C. § 1983. "Under of color of law" means that a state or local official acting as such (as opposed to a private person) caused the violation. *Jensen v. Lane Cnty.*, 222 F.3d 570, 574 (9th Cir. 2000). Accordingly, although Rance himself ultimately caused Jane Doe's claimed injuries, and although Rance could be sued for common law battery, Rance cannot be sued under § 1983 because he is not a government official.

Plaintiffs instead seek to use § 1983 to hold John Allen (as a school official) and the School District responsible for Rance's conduct. Under some circumstances, government officials may be held liable for a private person's wrongful acts if the government official created or enhanced the private person's opportunity to injure the victim. The beginning point of this analysis is *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).

In the early 1980s, two-year-old Joshua DeShaney was sent to live with his father in Winnebago County, Wisconsin. For about two years, county authorities received ever-mounting evidence that Joshua's father physically abused him. The county tentatively

1  intervened at one point, taking Joshua into court custody, but concluded that it had
2  insufficient evidence to keep him there. Accordingly, it returned Joshua to his father and
3  continued to monitor the situation for several more months. Additional evidence of abuse
4  came to light, but the county took no action. Finally, Joshua's father beat him so
5  savagely that Joshua fell into a coma and suffered permanent brain damage. Brain
6  surgery on Joshua revealed that he had suffered many injuries to the head over a long
7  span of time. *Id*. at 192–93.

8  Joshua and his mother brought a § 1983 action, arguing that the county's inaction
9  had deprived Joshua of his right to personal security in violation of the Fourteenth
10 Amendment's Due Process Clause. The Supreme Court rejected this claim: "[A] State's
11 failure to protect an individual against private violence simply does not constitute a
12 violation of the Due Process Clause." *Id*. at 197. An exception to this rule applies where
13 the state "restrains an individual's liberty [such] that it renders him unable to care for
14 himself, and at the same time fails to provide for his basic human needs," *id*. at 200, but
15 this did not apply to Joshua's situation.

16 The Supreme Court's *DeShaney* opinion also indirectly suggested another
17 exception — one based on dangers created or enhanced by the state: "While the State
18 may have been aware of the dangers that Joshua faced in the free world, it played no part
19 in their creation, nor did it do anything to render him any more vulnerable to them." *Id*.
20 at 201. This also did not apply to Joshua, despite the county's choice to return Joshua to
21 his father — because that choice placed Joshua "in no worse position than that in which
22 he would have been had [the county] not acted at all." *Id*. "The most that can be said of
23 the [county] is that they stood by and did nothing when suspicious circumstances dictated
24 a more active role for them," *id*. at 203, which, "though calamitous in hindsight[, ]simply
25 does not constitute a violation of the Due Process Clause," *id*. at 202.

26 **2.    *DeShaney* As Applied in the Ninth Circuit**

27 The Ninth Circuit has described the upshot of *DeShaney* as follows: "As a general
28 rule, members of the public have no constitutional right to sue state employees who fail

to protect them against harm inflicted by third parties. This general rule is modified by two exceptions: (1) the 'special relationship' exception; and (2) the 'danger creation' exception." *L.W.*, 974 F.2d at 121 (citations omitted).

Plaintiffs' complaint argues for the "special relationship" exception: "A special relationship existed between [Defendants] and Jane Doe wherein [they] were state actors required to protect the life, liberty, and property of individual students . . . while enrolled as a students [*sic*] within their care." (Doc. 1 at 12 ¶ 54.) The School District's motion to dismiss, however, points out that the Ninth Circuit rejects the proposition that schools have a "special relationship" with their students sufficient to permit § 1983 liability for inaction. *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 973–74 (9th Cir. 2011). In response, Plaintiffs shifted their focus to the "danger creation" theory, also sometimes known as the "state-created danger" exception.

### 3. "State-Created Danger"

The state-created danger exception "applies only where there is affirmative conduct on the part of the state in placing the plaintiff in danger" and "only where the state acts with deliberate indifference to a known or obvious danger." *Id.* at 974 (internal quotation marks omitted). Only the "affirmative conduct" element requires discussion here.

#### a. Affirmative Conduct Generally

The "affirmative conduct" sufficient for a "state-created danger" claim requires an action that "affirmatively place[s] the plaintiff in a position of danger." *Wood*, 879 F.2d at 589–90 (internal quotation marks removed). More specifically, the government actor must "affirmatively create[] an actual, particularized danger [that the plaintiff] would not otherwise have faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006).

This requirement is perhaps best understood in light of the cases finding the necessary conduct. These cases uniformly involve a government official who takes a specific action that places specific persons in a position of relatively less safety than they

enjoyed before the affirmative act. *See Kennedy*, 439 F.3d at 1055 (mother reporting a crime against her daughter fears retaliation from the alleged perpetrator and therefore asks police officer not to contact the alleged perpetrator about the crime without first warning her; police officer disregards this instruction and contacts the perpetrator, but then tells mother that he would put extra patrols in place; police officer does not do so; alleged perpetrator breaks into mother's house that night, killing her husband and wounding her); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082 (9th Cir. 2000) (on a very cold night, police officers eject a drunk patron from a bar but warn him not to drive his vehicle; patron is wearing only jeans and a t-shirt and dies of exposure); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (police encounter a man on the porch of his home displaying serious medical symptoms but cancel a 911 call already placed by his neighbors, bring him into his house, and leave him there alone, where he dies); *L.W.*, 974 F.2d at 121 (prison officers affirmatively assign an inmate with a known and "extraordinary history of unrepentant violence against women and girls" to work, unsupervised, with a female nurse working in the prison's clinic; inmate rapes nurse); *Wood*, 879 F.2d at 583 (police arrest the driver of a car, impound the car, and leave a female passenger in the car stranded in a high-crime neighborhood; passenger is eventually raped); *Ayala v. Mohave Cnty.*, No. CV-07-8105-PHX-NVW, 2008 WL 4849963 (D. Ariz. Nov. 7, 2008) (police arrest a driver, impound the vehicle, and require the drunk passenger, wearing dark clothing, to leave the scene — a dark highway — on foot; passenger is later struck by a passing vehicle and killed).

By contrast, there is no "affirmative act" when a government official allows a dangerous situation to develop or continue without intervention — even if the official affirmatively chooses not to intervene. These cases rest on *DeShaney*'s insistence that a "State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." 489 U.S. at 197. If a plaintiff's § 1983 claim would effectively impose a contrary requirement, it fails. *See Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007) (police adopt an interventionist riot control plan one

day, but then choose a passive plan the next day, allowing mass violence to continue in a contained area; plaintiffs are injured by that violence, but police not liable under § 1983); *O'Dell v. Casa Grande Elem. Sch. Dist. No. 4*, No. CV-08-0240-PHX-GMS, 2008 WL 5215329 (D. Ariz. Dec. 12, 2008) (school officials are aware of one student's threats to assault another student, but take no action to keep those students apart; assault happens as threatened, but school officials not liable under § 1983).

### b. Failure to Act

Before evaluating the facts of this case in light of these decisions, it bears noting what facts the Court assumes to be true. First, the Court assumes that Rance's sexual assaults in 2009 and 2010 — preceding his relationship with Jane Doe — were forcible rapes, as charged. Second, the Court assumes that John Allen knew that Rance had committed forcible rape. In other words, it would not be enough if all John Allen knew was that one of his students was sexually active with other students. School officials have no general constitutional duty to prevent students from having sex with each other. Therefore, the Court assumes that John Allen knew Rance had raped two other girls. Finally, the Court assumes the Jane Doe did not consent to Rance's conduct, as appears to be the case from Plaintiffs' counsel's statements at oral argument.

In light of all the foregoing, Plaintiffs' case is nonetheless closer to the decisions cited above finding no state-created danger. Plaintiffs' complaint repeatedly accuses John Allen of failing to do anything to protect the school community from Rance's behavior, leaving Rance free to seek sex from other girls. That does not, in itself, qualify as an affirmative act necessary to state a § 1983 "state-created danger" claim. John Allen had no federal constitutional duty to protect his students from a known danger. Concomitantly, he had no duty to disclose or warn of a known danger. Indeed, courts have so held in a variety of contexts at least as disturbing as those alleged here. *See*, *e.g.*, *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389 (5th Cir. 1999) (police officer knows a particular driver is drunk but refuses to pull him over and orders another officer not to pull him over; minutes later, driver collides with another vehicle and kills its occupants);

*Stevens v. Umstead*, 131 F.3d 697 (7th Cir. 1997) (school principal has actual knowledge of repeated sexual assaults by certain students on a particular disabled student, but does not intervene); *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996) (school officials have actual knowledge of pervasive bullying of gay student and refuse to intervene); *Pinder v. Johnson*, 54 F.3d 1169 (4th Cir. 1995) (en banc) (police have actual knowledge of violent threats made by former boyfriend against former girlfriend; police tell former girlfriend that former boyfriend will be locked up, but they do not do so, permitting former boyfriend to burn down former girlfriend's house, killing her children); *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364 (3d Cir. 1992) (school officials receive reports of possible student-on-student sexual abuse but do not intervene); *Kennerly v. Montgomery Cnty. Bd. of Comm'rs*, 257 F. Supp. 2d 1037 (S.D. Ohio 2003) (county officials know that a violent, house-arrested criminal has removed his home monitoring device and has escaped; county officials warn no one and do nothing to apprehend him, and he eventually kills a neighbor); *Doe v. Sabine Parish Sch. Bd.*, 24 F. Supp. 2d 655 (W.D. La. 1998) (school officials know of kindergarten student's sexually abusive behaviors toward other kindergartners, but do not intervene).

### c. Concealment

At one point in their complaint, Plaintiffs allege more than just knowledge and failure to act. Plaintiffs allege (on information and belief only) that John Allen knew of Rance's sexual assaults in 2009 and 2010 and "attempted to conceal these improper and illegal actions." (Doc. 1 at 8 ¶ 20.) At oral argument, Plaintiffs' counsel explained that he had no information that John Allen actively concealed anything, but meant these allegations as an elaboration on John Allen's failure to act. As noted, John Allen's alleged failure to act does not support a constitutional violation.

### d. Qualified Immunity

Even if Plaintiffs had adequately pleaded causation against John Allen, he is immune from suit under the doctrine of qualified immunity. Qualified immunity protects government officials from civil rights lawsuits unless (1) the official violated a

constitutional right, and (2) the constitutional right was clearly established at the time of the violation. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).

Here, the second prong resolves the qualified immunity analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts . . . [have] discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Assuming for purposes of argument that (i) John Allen knew Rance had committed two rapes, (ii) he actively concealed that information, and (iii) but for the concealment Jane Doe would have learned about Rance's behavior before she became involved with him, John Allen did not violate a "clearly established" constitutional right because it is not clearly established in the Ninth Circuit whether the state-created danger doctrine applies in situations where the government official creating the danger is not aware of the danger to the specific victim.

Every Ninth Circuit case permitting a state-created danger theory to go forward involves a danger that a government official created with respect to a specific person known to that official.[2] In the middle of this body of law's development, the Ninth Circuit noted:

> Our sister circuits disagree as to whether the danger-creation exception applies only when the danger created by a state official is directed toward a particular plaintiff, as opposed to being directed toward the general public. Because the [plaintiffs'] claim would fail regardless of whether the danger-creation theory extended to threats to the general public, we leave resolution of this question for another day.

*Huffman v. Cnty. of L.A.*, 147 F.3d 1054, 1061 (9th Cir. 1998) (citations omitted); *see also Kennedy*, 439 F.3d at 1073 (Bybee, J., dissenting) (noting that the question posed by *Huffman* remains open). This question remains unresolved.

---

[2] *See* cases cited at Part VI.A.3.a, *supra*.

There is no allegation that John Allen knew ahead of time about the threat that Rance posed specifically to Jane Doe. Plaintiffs instead allege that John Allen learned of Rance's sexual activity with Jane Doe after the third and final incident. (Doc. 1 at 9 ¶¶ 28–29.) At oral argument, counsel for Plaintiffs affirmed that the complaint was not alleging some sort of foreknowledge about Jane Doe specifically. Accordingly, assuming John Allen acted as Plaintiffs allege, he did not violate "clearly established" law. Plaintiffs' § 1983 claim against John Allen (and his wife) will therefore be dismissed on qualified immunity grounds.[3]

### B.   The School District's Liability

Plaintiffs also seek to hold the School District liable. The School District may be liable if a district employee (such as John Allen) committed a constitutional violation and that employee (1) "was acting pursuant to an expressly adopted official policy," (2) "was acting pursuant to a longstanding practice or custom," or (3) "was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). However, John Allen did not commit a constitutional violation. Plaintiffs acknowledge that their § 1983 claims rest upon his inaction — failure to protect or disclose — rather than affirmative action. There is no federal constitutional duty to protect another from harm. Accordingly, because John Allen committed no violation, the School District committed no violation.

---

[3] The Second Circuit has found a state-created danger from government officials' repeated inaction and the private actor's awareness of that inaction (often coupled with some sort of friendly interaction between the official and the private actor), thus emboldening the private actor to do what he would not otherwise have done. *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 427–31 (2d Cir. 2009); *Pena v. DePrisco*, 432 F.3d 98, 109–12 (2d Cir. 2005); *Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 373 (N.D.N.Y. 2011). The Ninth Circuit has not adopted such a theory. Therefore, if it applied, John Allen would be entitled to qualified immunity. Further, these cases are doubtful under *DeShaney*, where the abusive father saw that the county child protection officers did nothing of substance after every incident suggesting child abuse. *See DeShaney*, 489 U.S. at 191–93. There is no evidence in *DeShaney* of friendly interaction between county officers and the abusive father, but distinguishing *DeShaney* on those grounds alone is questionable.

### C. Futility of Amendment

Given Plaintiffs' concession that their claims rest on inaction, leave to amend against either John Allen or the School District would be futile. Leave to amend would also be futile against John Allen because he is protected by qualified immunity.[4] Plaintiffs' § 1983 claims will therefore be dismissed with prejudice.

## VII. TITLE IX CLAIM

### A. Elements

"[I]n certain limited circumstances," student-on-student sexual harassment supports a Title IX civil damages claim against a recipient of federal funds, such as the School District. *Davis*, 526 U.S. at 643. The elements of such a claim are as follows:

1. the school must exercise its "substantial control over both the harasser and the context in which the known harassment occurs," *id*. at 645;
2. the sexual harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school," *id*. at 650;
3. the school must have had "actual knowledge" of the harassment, *id*.; and
4. the school must have acted with "deliberate indifference" to the harassment, *id*. at 644.

### B. Elements as Compared to the Complaint

As alleged in the complaint, Plaintiffs' claims do not satisfy any of these elements. To begin, the school did not exercise substantial control over the "context" of Rance's sexual conduct with Jane Doe. All of it took place off campus. Although the February 14 incident began at school with an invitation to go to lunch, it is not harassment to invite someone to lunch — and that is the only conduct over which the school might exercise

---

[4] Qualified immunity protects only individuals, not government entities. *Owen v. City of Independence*, 445 U.S. 622, 650 (1980).

- 15 -

substantial control.  Moreover, at oral argument it became clear that Jane Doe was willing to go with Rance to lunch, although unwilling to have sex with him.

Second, there is no allegation that Rance's behavior was "so severe, pervasive, and objectively offensive that it can be said to deprive [Jane Doe] of access to the educational opportunities or benefits provided by the school."  Indeed, there is no allegation at all about how Rance's behavior affected Jane Doe's educational opportunities.

Third, Plaintiffs' complaint discloses that no school district employee had actual knowledge of Rance's sexual conduct with Jane Doe until after it ended.  (Doc. 1 at 9 ¶¶ 28–29.)   The actual knowledge element therefore fails.   And without actual knowledge, the fourth element — deliberate indifference — likewise fails.

### C. Plaintiffs' Expanded Theory

#### 1. Additional Alleged Facts

Following oral argument, the Court invited Plaintiffs to submit a memorandum explaining what they would allege regarding their Title IX claim in an amended complaint, if given an opportunity to amend.  That memorandum contains significantly more detail about Rance's behavior and School District employees' actions.

According to Plaintiffs, Rance's parents were aware of the forcible rape Rance committed in 2010 because a police officer spoke with John Allen about it and Rance received professional counseling on account of it.  Also, sometime prior to Rance's relationship with Jane Doe, a teacher at Round Valley High School filed a report with the administration regarding sexually inappropriate comments Rance had made toward female students.  Plaintiffs do not allege, however, that any of this behavior affected Jane Doe.

Plaintiffs go on to claim that Rance and other students (especially female students) began harassing Jane Doe in the latter half of February 2011, after the third sexual incident between Rance and Jane Doe.  This harassment included name-calling, such as "whore," and taunting Jane Doe by suggesting that she was pregnant with Rance's child.

1  At one point, Rance asked Jane Doe for a piece of gum, which she gave him, and he
2  discarded the gum wrapper by reaching down Jane Doe's shirt and stuffing the wrapper
3  into her bra without her permission.

4  Plaintiffs say that this harassment increased after the March 2, 2011 meeting
5  (alleged in the complaint) between Jane Doe's mother, John Allen, and Rance. Students
6  increased the frequency and aggressiveness of their name-calling, and also began to make
7  disparaging comments about Jane Doe on Facebook, by telephone, and by text message.
8  This harassment became severe enough that Jane Doe began avoiding school, and her
9  academic performance accordingly suffered.

10  Rance's arrest on March 30, 2011 allegedly caused the harassment to escalate
11  even further. Jane Doe's mother learned of female students who had expressed their
12  intent to "kick [Jane Doe's] ass" because they viewed Rance' arrest as unfair, and they
13  held Jane Doe responsible. Jane Doe also received additional comments on Facebook,
14  such as, "Me and my friends want to know how you feel about putting our friend Rance
15  in prison for the rest of his life." These comments made Jane Doe even more fearful of
16  attending school.

17  On April 6, 2011, Jane Doe's mother contacted the high school's vice principal
18  and specifically informed him about the harassment. She also informed John Allen about
19  the perceived physical threats against Jane Doe. The vice principal suggested that Jane
20  Doe could enroll instead at White Mountain Academy, the School District's alternative
21  school intended for at-risk students. According to Plaintiffs, "Round Valley High School
22  would have provided Jane Doe with better educational opportunities than the alternative
23  school. However, Jane Doe enrolled at the White Mountain Academy because she and
24  her family recognized that Principal Allen was unwilling to prevent the harassment from
25  other students." (Doc. 17 at 5.)

26  White Mountain Academy operates on a pass/fail grading system. Plaintiffs
27  therefore fear that Jane Doe's transcript could be a liability in any future college
28  admission decisions. In addition, White Mountain Academy is across the street from the

- 17 -

high school. On at least two occasions, female students from the high school somehow "threatened Jane Doe while she was attending White Mountain Academy." (*Id.*) Plaintiffs do not specify how this happened, but a teacher at the Academy "intervened and sent the girls away when he discovered the harassment." (*Id.*) Plaintiffs allege that they are aware of no discipline imposed upon the harassers.

Finally, Plaintiffs say, harassment directed at Jane Doe and her family increased to the point where they decided to leave town and resettle in Show Low, "with the hope of making a new start." (*Id.* at 6.) Plaintiffs do not allege the context of this continuing harassment.

### 2. Continuing Inability to Establish Actual Knowledge and Deliberate Indifference

Plaintiffs have alleged a disturbing situation. Various legal theories may provide relief in such a situation. Title IX, however, is not one of them, despite Plaintiffs' additional allegations. First, Plaintiffs' allegations raise a substantial question of whether the harassment Jane Doe allegedly experienced is sexual harassment for Title IX purposes. The Supreme Court has declared that sexual harassment is considered a species of "discrimination" "on the basis of sex" that Title IX prohibits. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992). "Sex" here does not mean "sexual activity," but rather is synonymous with "gender." Thus, it is not clear whether the harassment primarily alleged here — female students taunting Jane Doe about her sexual activity, and threatening to retaliate for her supposed involvement in Rance's arrest — is a form of discrimination "on the basis of sex." Rance could be said to have "discriminated" against Jane Doe because of her sex, but the other girls "discriminated" against Jane Doe, if at all, because of her relationship with Rance.

However, the Court need not resolve whether Plaintiffs' allegations amount to "sexual harassment" for Title IX purposes. Even assuming they do, Plaintiffs' Title IX claim still fails on its elements. Specifically, Plaintiffs' allegations do not satisfy the "actual knowledge" element. Plaintiffs allege that School District employees knew that

1   Rance had committed one rape in 2010, and that he had made sexually inappropriate
2   remarks to female students. But that is not the "actual knowledge" necessary for a Title
3   IX claim, which requires actual knowledge of harassment "so severe, pervasive, and
4   objectively offensive that it can be said to deprive the victims of access to the educational
5   opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. There is no
6   claim that Rance's behavior met this standard, or that it affected Jane Doe in any way.

7   As for the behavior that *did* affect Jane Doe — the harassment from fellow
8   students[5] — Plaintiffs allege that they brought it to the School District's attention a few
9   weeks after it started, and were immediately offered an opportunity to enroll Jane Doe at
10  an alternative school. Thus, Plaintiffs' claims also fail on the "deliberate indifference"
11  element. When School District employees learned about the harassment, they acted. As
12  the Supreme Court said in *Davis*, "the [school] must merely respond to known peer
13  harassment in a manner that is not clearly unreasonable." *Id.* at 649. To offer enrollment
14  at White Mountain Academy is not "clearly unreasonable." John Allen and the vice
15  principal could also have attempted to discipline the harassers, but their choice instead to
16  offer Jane Doe a spot at White Mountain Academy does not render them deliberately
17  indifferent. Indeed, the Supreme Court warned against "second-guessing the disciplinary
18  decisions made by school administrators." *Id*.

19  The same is true for the two incidents of harassment involving Round Valley High
20  School girls somehow harassing Jane Doe at White Mountain Academy. When a teacher
21  there learned of the harassment, he intervened. There was no deliberate indifference.

22  Accordingly, despite Plaintiffs' additional allegations, they have not shown that
23  they can state a Title IX cause of action. Leave to amend would therefore be futile, and
24  will not be granted. Plaintiffs' Title IX claim will be dismissed with prejudice.

---

[5] Not all of this harassment took place in a "context" over which the School District had "substantial control over . . . the harasser." *Davis*, 526 U.S. at 645. Postings on Facebook, for example, may not be within the School District's control, especially if done off-campus or through the student's own computer or phone.

## VIII. REMAND

The Court does not reach Defendants' challenges to Plaintiffs' state-law claims. Because all of Plaintiffs' federal claims will be dismissed, there is no longer a federal question in this case and it will be remanded to the state court as to the remaining claims.

IT IS THEREFORE ORDERED that Round Valley Unified School District's Motion to Dismiss (Doc. 4) and the Motion to Dismiss by John and Julie Allen (Doc. 5) are GRANTED as to Count I (Title IX) and Count II (42 U.S.C. § 1983) in their entirety, and as to punitive damages against the Round Valley Unified School District.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing Plaintiffs' Count I (Title IX) and Count II (42 U.S.C. § 1983) in their entirety, and their claims for punitive damages against the Round Valley Unified School District, with prejudice for failure to state a claim upon which relief can be granted. The Court expressly finds there is no just reason for delay in entry of this partial judgment and expressly directs its immediate entry.

IT IS FURTHER ORDERED that the Clerk then REMAND this case to the Apache County Superior Court. The Clerk shall terminate this case.

Dated this 7th day of June, 2012.

_____
Neil V. Wake
United States District Judge